UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
KINGVISION PAY-PER-VIEW CORP.,
LTD.,

                      Plaintiff,

       - v -

ROJAS DELI GROCERY, INC., d/b/a Rojas
Deli and Grocery, and MAXIMINO ROJAS,
Individually and as an officer, director,
and/or shareholder of Rojas Deli Grocery
Inc.,

                      Defendants.
----------------------------------------------------------x

**REPORT AND RECOMMENDATION**

CV 06-3042 (NGG)(VVP)

**POHORELSKY, U.S. Magistrate Judge:**

       This matter was referred to me by the Honorable Nicholas G. Garaufis for a report and recommendation regarding the amount of damages and attorney's fees to be awarded to the plaintiff as against the defaulting defendants Rojas Deli Grocery, Inc., and Maximino Rojas. This case involves the defendants' unauthorized interception, reception and publication of the plaintiff's closed-circuit telecast of the Felix Trinidad v. Winky Wright boxing match (hereafter "the event") on May 14, 2005, without the prepayment of the required sublicense fee. The plaintiff seeks statutory damages as provided under 47 U.S.C. §§ 553 (c) and 605 (e)(3). *See* Complaint ¶ 44.

    *1.    Liability*

       The plaintiff seeks statutory damages as provided under 47 U.S.C. §§ 553(c) and 605 (e)(3). In this case, the pleadings allege that the defendants' actions establish violations of both sections 553 and section 605. Although these sections overlap, there are meaningful distinctions between the two. Section 605 applies to the theft of a radio communication, whether or not the

radio communication is thereafter sent out over a cable network. *Int'l Cablevision, Inc. v. Sykes* (hereinafter "*Sykes II*"), 75 F.3d 123, 132-133 (2d Cir. 1996). Section 533 applies to communication thefts from a cable network, whether or not the communication originated as a radio communication. *Id.* at 133. In order for the theft of a single communication to violate both sections, the plaintiff must establish that a communication which constituted a "radio communication" within the meaning of section 605 was then transmitted over, and intercepted from, a cable network. *See id*. at 132-33. Although the plaintiff has established violations of Section 605, it has not established any violations of Section 553.

Given the default, the well-pleaded allegations of the Complaint against the defendants are deemed admitted, except as to the amount of the plaintiff's damages. *See, e.g.*, *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Although the pleadings do not clearly state that the event originated as a satellite signal, which is considered a radio communication under title 47, *see Int'l Cablevision, Inc. v. Sykes*, 97 F. 2d 998, 1008 (2d Cir. 1993) (quoting 130 Cong. Rec. 31,874, *reprinted in* 1984 U.S.C.C.A.N. 4746), the pleadings do assert that the defendants could not have intercepted the event without "electronic decoding equipment and satellite coordinates necessary to receive the signal of the Event." *See* Complaint ¶ 13. The reference to satellite signals provides a sufficient basis to establish that the pay-per-view event originated with a radio transmission such that the defendants' interceptions of the event amounted to a violation of section 605. *See Kingvision Pay-Per-View, Ltd. Corp. v. Jasper Grocery,* 152 F. Supp. 2d 438, 440-41 (S.D.N.Y. 2001). The complaint, however, fails to assert

that the radio communication was "offered over a cable system" which is a prerequisite for liability under section 553. *See* 47 U.S.C. § 553(a)(1).

It is also clear from the pleadings that, after willfully intercepting and receiving interstate communication of the event, the defendants published the event to their patrons without obtaining from the plaintiff the contractual right to do so. *See* Complaint ¶¶ 14-21. The court further accepts as fact the allegation that the defendants' purpose and express intent in committing the wrongful action was to secure financial gain and commercial advantage, specifically the patronage of customers who would otherwise have been able to view the pay-per-view event only at a properly authorized commercial establishment for a cover charge. *Id.* ¶¶ 18-22.

   2.   *Damages*

These facts having been established, the plaintiff, which has elected to receive statutory damages, is entitled to an award "as the court considers just," between a range of $1,000 to $100,000 for each unauthorized reception and publication of a radio communication by the defendants in violation of section 605. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II), (ii). Full costs, including reasonable attorney's fees, may also be granted. 47 U.S.C. § 605 (e)(3)(B)(iii).

The court received affidavits in lieu of holding an evidentiary hearing on these issues. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 11 (2d Cir. 1997) ("We have held that, under rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d. Cir.1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir.1993). As no party has

objected to that procedure, the court has considered affidavits submitted by the plaintiff, and concludes that they provide a basis for awarding the damages recommended below.

In setting the amount of statutory damages within the applicable range under section 605(e)(3)(C), the court first considers the revenue lost from the defendants' failure to make the necessary sublicense fee payment. An affidavit submitted by the plaintiff establishes that the sublicense fee charged to the defendants would have been calculated at a rate of $20.00 times the fire occupancy limit of the bar. *See* Plaintiff's Affidavit in Support of Default Judgment (hereinafter "Corwin Aff.") ¶ 7. Using this formula, the Corwin Affidavit postulates that the fee would have been $3,000 based on an assumed occupancy limit of 150 persons. Neither the Corwin affidavit, however, nor the affidavit of Liana Orduna, the auditor who witnessed the event being displayed in the defendants' establishment, disclose what the actual occupancy limit of the establishment was. In fact, the Orduna affidavits state that there were only ten patrons present in the establishment during the event. Therefore, the court rejects as unreliable the plaintiff's unsupported claim that the defendants would have been charged in excess of $3000 based on a one-hundred and fifty person occupancy.

Rather, the court adopts a method of estimating plaintiff's damages used by other courts in this district in similar circumstances. This method seeks to estimate the potential commercial gain derived by the defendants by multiplying the number of patrons in the defendant's establishment during the event by $50. Using that formula here yields an estimate of $500 (10 patrons times $50) as the proceeds derived by the defendants from their illegal reception of the plaintiff's broadcast. *See, e.g., Entertainment By J & J, Inc. v. Mama Zee Restaurant 7 Catering*

*Services, Inc.,* No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (citing *Time Warner Cable v. Taco Rapido Restaurant,* 988 F. Supp. 107, 111 (E.D.N.Y. 1997)).

The court recommends that an award based on the defendants' commercial gain should be enhanced to penalize the defendants, as the plaintiff has established that the defendants' conduct was undertaken willfully and for purposes of commercial advantage or private financial gain. *See* 47 U.S.C. § 605 (e)(3)(C)(ii); Complaint ¶¶ 14, 18, 30. The defendants clearly undertook active steps in order to obtain the transmission, because the transmission had to be decoded with electronic decoding equipment in order for the signal to be received and displayed. Corwin Aff. ¶¶ 8, 9. As discussed above, the purpose of displaying the broadcast was to attract customers to the defendants' business establishment for commercial gain. Absent substantial financial penalties, the defendants will likely continue to illegally display the plaintiff's programming and other such establishments will follow suit. The plaintiff cannot practicably investigate all these infractions, nor should they be expected to do so.

Moreover, the plaintiff has suffered financial losses that are not easily quantified, including loss of investment resources in the promotion of the event, possible damage to reputation, and loss of its ability to market future events and to control and receive fees for the reception of these events. *See* Complaint ¶¶ 27-29. The latter is a significant loss, as it results in the erosion of the plaintiff's customer base, because the commercial establishments who rightly pay the sublicense fee find it difficult to compete with those who do not. Establishments authorized to carry the event are contractually obligated to impose a cover charge on their customers. *See* Corwin Aff. ¶¶ 10-12. On the other hand, establishments like the defendants' can increase patronage by not charging, or significantly reducing the charge, for potential

customers. *Id.* Conceivably, the plaintiff's legitimate, licensed subscribers would eventually prefer to expose themselves to the risks of illegally intercepting the programming rather than deal with the plaintiff at a commercially disadvantageous cost.

In order to preserve the plaintiff's livelihood, the defendants must be held accountable for an amount significant enough to deter such conduct. Absent such a deterrent, the defendants and other potential infringers will be encouraged to violate the law, as infringement would be more cost effective than contracting with the plaintiff. Given the above considerations, the court recommends that the estimated commercial gain be trebled, such that the total damages awarded should be $1,500.

### 3. Attorney's Fees

Section 605(e) mandates that a prevailing plaintiff shall recover reasonable attorney's fees. 42 U.S.C. § 605(e)(3)(B)(iii). The court calculates this fee by multiplying the number of reasonable hours expended on the litigation times a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To facilitate this analysis, the Second Circuit requires that attorneys applying for court-ordered compensation document the application with contemporaneous time records specifying, for each attorney, the date, the hours expended, and the nature of the work done. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2nd Cir. 1983).

==The plaintiff has submitted an affidavit of its attorney in support of a request for $1,050 in attorneys' fees, based on 4.2 hours of work performed at a rate of $250 per hour. Explanations are provided for 2.2 of the hours, but for the remaining 2 hours of work counsel offers no explanation of the tasks performed.  *See* **Affidavit for Attorney's**==

-6-

**Fees ¶¶ 3-4, 8-9. As a result, the court is unable to make any determination about the reasonableness of the two hours spent, and therefore must exclude those hours from any fee award. The court also finds the rate of $250 per hour for attorney time to be excessive, given the work done by the attorney.** The papers submitted by counsel in this action, including the Complaint, Affidavits, and Memorandum of Law are almost mirror images of documents prepared by this attorney in other actions filed in this court. *See e.g.*, *KingVision Pay-Per-View, Ltd. Corp., v. Forbes,* No. 02 CV 0239 (ARR)(VVP), *KingVision Pay-Per-View, Ltd. Corp., v. Cesar's Pizza Restaurant, Inc.* No. 02 CV 0260 (ILG)(VVP), *KingVision Pay-Per-View, Ltd., v. El Viejo,* No. 05 CV 5637 (DLI)(VVP). In addition, a reduction is further justified by counsel's repeated utter disregard for prior decisions in this Circuit prohibiting double recovery under both sections 553 and 605 that the plaintiff has sought in this case. *See KingVision Pay-Per-View Corp., Ltd. v. Drencia Restaurant Corp.,* No. 01 Civ. 9777 (S.D.N.Y. May 15, 2002). Therefore, it is reasonable to reduce the hourly rate to $175, a rate that is generally awarded by the court in like cases where similar boilerplate submissions are made. *See King Vision Pay-Per-View Corp., Ltd. v. Drencia Restaurant Corp.*, No. 01 CIV.9777 (S.D.N.Y. May 15, 2002); *King Vision Pay-Per-View Corp., Ltd. v. Papacito Lidia Luncheonette, Inc.*, No. 01 CIV.7575 (S.D.N.Y. Dec. 6, 2001); *King Vision Pay-Per-View, Ltd. Corp. v. New Paradise Restaurant*, 2000 WL 378053 (S.D.N.Y. Apr. 11, 2000). Accordingly, the court recommends plaintiff should be awarded $385 for attorneys' fees consisting of 2.2 hours at $175 per hour.

In accordance with the above considerations, the undersigned hereby **RECOMMENDS** that statutory damages in the amount of $1,500, and attorney's fees in the amount of $385 be awarded in favor of the plaintiff and against the defendants.

\* \* \* \* \* \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendant by regular mail and file proof of such service in the record.**

                                      SO ORDERED:

                                      *Viktor V. Pohorelsky*
                                      VIKTOR V. POHORELSKY
                                      United States Magistrate Judge

Dated: Brooklyn, New York
          September 18, 2007